[S. F. No. 16199. In Bank.—May 27, 1940.]

MARTIN E. SIMON et al., Plaintiffs and Appellants, v. BLANCHE M. GRAYSON, as Executrix, etc., Respondent; HELEN BAUMAN et al., Defendants and Appellants.

W. H. Spaulding and Jerome Politzer for Appellants.

R. F. Mogan and Otto C. Stelling for Respondent.

WASTE, C. J.—The question presented for determination upon this appeal involves the construction and effect to be given a provision in a will purporting to incorporate a letter by reference. Respondent's claim to certain of the estate's funds is based upon the terms of the letter. The appellants, who are residuary legatees under the will, contend that the attempted incorporation by reference was ineffectual. The facts, which were presented to the trial court upon an agreed statement, are as follows:

S. M. Seeligsohn died in 1935. His safe deposit box was found to contain, among other things, a will and codicil and a letter addressed to his executors. The will, which was dated March 25, 1932, contained a provision in paragraph four, leaving $6,000 to his executors "to be paid by them in certain amounts to certain persons as shall be directed by me in a letter that will be found in my effects and which said letter will be addressed to Martin E. Simon and Arthur W. Green (the executors) and will be dated March 25, 1932." Paragraph four also provided that any one having an interest in the will "shall not inquire into the application of said moneys" and that the executors "shall not be accountable to any person whomsoever for the payment and/or application of said sum . . . this provision . . . is in no sense a trust".

The letter found in the testator's safe deposit box was dated July 3, 1933, and stated: "In paragraph VIII of my will I have left you $6,000—to be paid to the persons named in a letter and this letter is also mentioned in said paragraph. I direct that after my death you shall pay said $6,000 as follows: To Mrs. Esther Cohn, 1755 Van Ness Ave. San Francisco, Calif. the sum of $4,000— . . . If any of the said persons cannot be found by you within six months after my death, or if any of the said persons shall predecease me, the sum directed

to be paid to such persons . . . shall be paid by you to my heirs as described in paragraph IX of my said Will. . . . '' This letter was written, dated and signed entirely in the handwriting of the testator. No letter dated March 25, 1932, was found among his effects.

The codicil to the will was executed November 25, 1933. It made no changes in paragraph IV of the will and contained no reference to the letter, but recited, ''Except as expressly modified by this Codicil, by Will of March 25th 1932 shall remain in full force and effect.''

Esther Cohn's whereabouts was known to the testator's executors immediately following his death, but she herself died a week later. Respondent, as her executrix, claimed the $4,000 mentioned in the letter. This claim was challenged by appellants, residuary legatees under Seeligsohn's will, and his executors brought suit interpleading the disputants. From the agreed facts the trial court drew conclusions of law and rendered judgment in favor of the respondent. The chief question is whether the letter was effectually incorporated by reference into the will.

It is settled law in this state that a testator may incorporate an extrinsic document into his will, provided the document is in existence at the time and provided, further, that the reference to it in the will clearly identifies it, or renders it capable of identification by extrinsic proof. (*Estate of Plumel,* 151 Cal. 77 [90 Pac. 192, 121 Am. St. Rep. 100]; *Garde* v. *Goldsmith,* 204 Cal. 166 [267 Pac. 104]; *Estate of Martin,* 31 Cal. App. (2d) 501 [88 Pac. (2d) 234]; 16 Cal. L. Rev. 154.) An attempt to incorporate a future document is ineffectual, because a testator cannot be permitted to create for himself the power to dispose of his property without complying with the formalities required in making a will. (*Keeler* v. *Merchant's Loan & Trust,* 253 Ill. 528 [97 N. E. 1061].)

In the case at bar the letter presumably was not in existence when the will was executed, for the letter bore a date subsequent to the date of the will. (Code Civ. Proc., sec. 1963, subd. 23.) However, the letter was in existence at the time the codicil to the will was executed. The respondent points out that under the law the execution of a codicil has the effect of republishing the will which it modifies (Prob. Code, sec. 25), and argues from this that Seeligsohn's letter

534

was an "existing document" within the incorporation rule. The only authorities cited by the parties on this point are several English decisions. These cases hold that although an informal document is not in existence when the will referring to it is executed, a later republication of the will by codicil will satisfy the "existing document" rule and will incorporate it by reference provided the testamentary instruments sufficiently identify it. (*In re Goods of Lady Truro*, (1866) L. R. 1 P. & D. 201; compare *In re Goods of Smart*, (1902) L. R. Prob. Div. 238; 4 Cal. L. Rev. 356.) The principle of republication thus applied is unquestionably sound. In revising his scheme of testamentary disposition by codicil a testator presumably reviews and reaffirms those portions of his will which remain unaffected. In substance, the will is re-executed as of that time. Therefore, the testator's execution of the codicil in the present case must be taken as confirming the incorporation of the letter then in existence, provided the letter can be satisfactorily identified as the one referred to in the will. And this is true, notwithstanding the codicil made no reference to the letter and recited that the will should remain in full force "except as expressly modified by this codicil", for the letter, if properly incorporated, would be an integral part of the republished will.

We are also of the opinion that the trial court did not err in concluding that the letter found with the will was the letter referred to in the will. Conceding the contrary force of the discrepancy in dates, the evidence of identity was, nevertheless, sufficient to overcome the effect of that factor. The controlling authorities in this state do not require that the informal document be identified with exact precision; it is enough that the descriptive words and extrinsic circumstances combine to produce a reasonable certainty that the document in question is the one referred to by the testator in his will. (*Estate of Miller*, 128 Cal. App. 176 [17 Pac. (2d) 181]; *Estate of Martin, supra; Estate of Plumel, supra.*) Here the letter was found in the safe deposit box with the will. It was addressed to the executors, as the will stated it would be. No other letter was found. Moreover, the letter is conceded to have been written by the testator, and its terms conform unmistakably to the letter described in the will. It identifies itself as the letter mentioned in the will and deals with the identical subject matter referred to in that

portion of the will. All these circumstances leave no doubt that the letter of July 3, 1933, is the one that the testator intended to incorporate in paragraph four of his will.

Appellants also contend that the bequest to Esther Cohn lapsed upon her death seven days after the death of the testator. They would read the provisions of the will and letter as creating a contingent bequest payable only if the legatee should be alive at the time it became legally payable to her. Hence, it is said, the gift must fail because no distribution could have been made until at least four months after issuance of letters testamentary in the testator's estate. (Prob. Code, sec. 1000.) But such an interpretation is contradicted by the testator's own language. The letter creates only two contingencies upon which the legacies would lapse— the inability of the executors to find any of the legatees mentioned within six months after the testator's death, or the prior death of any of the legatees. As the stipulated facts show, neither of these contingencies occurred in the case of Esther Cohn. If it be conceded that the legacy to her would not vest until she was "found" by the executors, the facts show that they knew of her whereabouts within two days after the death of the testator.

The authorities relied upon by the appellants in this connection are either cases in which a testamentary trust creating a life estate was held to fail upon the death of the life beneficiary or in which precatory language in a will conferred upon a legatee the absolute power to dispose of a bequest in his own discretion. Here the executors do not claim that they have discretion to determine who is entitled to the funds in their hands. On the contrary, they have recognized that the mandatory force of the directions contained in the letter is inconsistent with any such discretion, and have sought to have the dispute determined in the courts.

Appellants finally claim that they were at least entitled to a judgment that the executors are legally free to pay the money over to them because of the provisions of paragraph four of the will purporting to exempt the executors from the duty to account. Without determining the validity or effect of that provision, it is a sufficient answer to the contention to note that the trial court was called upon by the executors to settle the controversy, and the judgment direct-

ing the disposition of the funds in their hands was therefore entirely proper.

The conclusions we have reached make it unnecessary to pass upon the respondent's contention that the letter is sufficiently testamentary in character to stand as an independent testamentary instrument.

The judgment is affirmed.

Shenk, J., Carter, J., Curtis, J., and Gibson, J., concurred.

Rehearing denied.